# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF GEORGIA

### SAVANNAH DIVISION

THOMAS EDWARD NIX,     )
                              )
     Movant,          )
                              )
v.                          )     Case No.    CV411-160
                              )                       CR409-164
UNITED STATES OF AMERICA,  )
                              )
     Respondent.     )

## REPORT AND RECOMMENDATION

Thomas Nix moves for 28 U.S.C. § 2255 relief. (Doc. 1.[1]) For the following reasons, his motion should be **DENIED**.

## I.    BACKGROUND

In 2006, Concept Finishings of Savannah, Inc., ("Concept") hired Nix to perform accounting services. (Presentence Investigation Report ("PSI") ¶ 5.) After suffering inexplicable financial difficulties, Concept directed Nix to produce certain financial statements and reports in order to analyze the situation. (*Id.* ¶ 6.) Nix refused and was

---

[1] Unless otherwise noted, citations are to the docket in Nix's civil case, CV411-160. "Cr. doc." refers to documents filed under his criminal case, CR409-164. Additionally, page references are to the CM/ECF screen page rather than the referenced document's own internal pagination.

terminated. (*Id.*) Concept hired an independent CPA to review the books. (*Id.*) He discovered that the amounts payable on certain checks were incorrect. (*Id.* ¶ 7.) The company retained two additional accountants to double-check the findings, and they reached the same conclusion. (*Id.*) After examining the questionable checks, the company owners realized that Nix had forged their signatures on checks payable to himself. (*Id.*) Secret Service agents verified that the funds were deposited into Nix's personal accounts. (*Id.*) In total, Nix had issued more than $100,000 in fraudulent checks to himself. (*Id.* ¶ 8.) In addition, defendant fraudulently added himself as an American Express charge account business cardholder for the company and charged thousands of dollars in unauthorized goods and services to the account. (*Id.* ¶¶ 9-11.) After Concept fired him, he continued his fraud campaign against his next employer, The Arts Center, in Highland Park, Illinois. (*Id.* ¶¶ 13-17.)

Eventually, Nix was indicted by a federal grand jury. (Cr. doc. 1.) He pled guilty to one count of bank fraud (cr. doc. 35 (plea agreement)), was sentenced above the United States Sentencing Guidelines ("USSG")

advisory range (27-33 months) to 51 months' imprisonment (cr. doc. 36 (judgment)), then unsuccessfully appealed his sentence. *See United States v. Nix*, 415 F. App'x 981 (11th Cir. 2011). He now moves for 28 U.S.C. § 2255 relief, claiming: (1) ineffective assistance of counsel; (2) prosecutorial misconduct; (3) judicial misconduct relating to the upward variance; (4) prejudicial misconduct in preparation of the PSI; (5) cumulative errors giving rise to a violation of due process; and (6) judicial failure to properly consider the 18 U.S.C. § 3553(a) sentencing factors. (Doc. 1 at 4-9; 14.)

## II. ANALYSIS

### A. Procedurally Defaulted Claims

Grounds 2, 4, 5, and 6 are procedurally defaulted since Nix did not raise them on direct appeal.[2] A § 2255 movant may not use a collateral attack as a "surrogate" for a direct appeal. *Lynn v. United States*, 365

---

[2] On appeal, Nix first argued that the sentencing judge improperly departed above the Guidelines range without providing proper notice, as required under Fed. R. Crim. P. 32(h). *Nix*, 415 F. App'x at 982. The Eleventh Circuit rejected the claim, concluding that Rule 32(h) did not apply since the judge employed a § 3553(a) *variance* rather than an upward departure. *Id.* at 982-83. Next, he argued that even if the sentence was raised by a variance, it was still procedurally and substantively unreasonable. *Id.* at 983. Again, the appellate court disagreed, concluding that the sentencing judge properly looked to Nix's criminal history and other relevant conduct in imposing the sentence. *Id.* at 983-84.

F.3d 1225, 1232 (11th Cir. 2004); *see Stone v. Powell*, 428 U.S. 465, 478 n.10 (1976) (28 U.S.C. § 2255 will not be allowed to do service for an appeal). The courts have crafted the procedural default rule to address such situations: "a [movant] generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else he is barred from presenting the claim in a § 2255 proceeding." *Lynn*, 365 F.3d at 1234; *Hill v. United States*, 317 F. App'x 910, 913-14 (11th Cir. 2009).[3] Since Grounds 2, 4, 5, and 6 could have been raised on direct appeal but were not, the Court need not consider them on the merits unless Nix can establish cause and prejudice excusing his default (or establish his actual innocence of the crimes). *Lynn*, 365 F.3d at 1234 (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)); *United States v. Nyhuis*, 211 F.3d 1340 (11th Cir. 2000). Nix has not done so.[4] He simply states that he did not raise them on appeal because a "[§] 2255

---

[3] Nix's ineffective assistance of counsel claims are not subject to the procedural default rule and thus "may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim[s] on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003).

[4] While "constitutionally '[i]neffective assistance of counsel . . . is cause'" for excusing a procedural default, *McCleskey v. Zant*, 499 U.S. 467, 494 (1991) (citations omitted), Nix has not asserted that counsel was deficient in failing to raise these particular claims on appeal.

motion is the proper proceeding to first raise" the issues. (Doc. 1 at 14.) He is incorrect. Accordingly, these claims fail.

Those same grounds (2, 4, 5, and 6) also fail on the merits. In Ground 2, Nix contends that the prosecutor misled the sentencing judge as to the American Express card account and otherwise suborned perjury on that score. To make out a prosecutorial misconduct claim, however, he must establish that the prosecutor knowingly used perjured testimony and the falsehood was material. *United States v. Woodruff*, 296 F.3d 1041, 1043 n.1 (11th Cir. 2002). Even crediting Nix's assertion that the prosecution tendered faulty evidence, Nix has not offered any facts showing that the prosecution *knowingly* presented perjured testimony. Moreover, the falsehoods are immaterial. Nix steadfastly insists that he did not open an American Express card account without the knowledge of Concept's owners. (Doc. 4 at 1-3.) Whether Nix fraudulently opened the account, fraudulently added himself as an authorized user to an existing account, or was added by the owners as an authorized user, he still made unauthorized, personal purchases using the cards and then redirected corporate resources to cover up the expenditures. (*See* doc. 8

at 2-3 (order denying Nix's motion for discovery on this very issue).) Nix even *admitted* while entering his plea that he used the corporate credit cards for unauthorized purchases. (Cr. doc. 51 at 24 (plea hr'g tr.).) Based upon that admission, the details are largely irrelevant, except to the extent that they supported a sophisticated-means, Guidelines enhancement. He still more than met the requirements for that enhancement based upon his check forgery, redirecting funds to pay off the American Express purchases, and otherwise "cooking" the business's books. (PSI objections ¶ 3.)

Nix next claims, in Ground 3, that the prosecution exercised undue influence upon the probation officer when he prepared the PSI and refused to discuss his own calculations showing that the loss amount should have totaled less than $120,000. Nix proffers no evidence suggesting that the probation officer was under any undue influence by the Assistant United States Attorney prosecuting the case. Moreover, the prosecution had no reason to meet with Nix to discuss the loss calculations. Nix was free to dispute the calculations both with the

probation officer and again at sentencing. His Ground 3 claims should be denied outright.

In Ground 4, Nix contends that the probation officer abandoned his neutral role by failing to properly investigate and report the PSI facts. (Doc. 4 at 15-16.) Nothing in the PSI suggests that the probation officer preparing the report abandoned his neutral role. Instead, it suggests that he exercised his independent judgment in fact-finding, which is his duty. *United States v. Ortiz-Medina*, 187 F.3d 624, *3 (1st Cir. 1999) (table). Again, Nix was given every opportunity to dispute the PSI factual recitation. (Cr. doc. 52 at 4-5.) Indeed, he made certain objections prior to sentencing, though he later withdrew them. (*Id.*; PSI objections.) Hence, even if the probation officer blatantly misstated the relevant facts, Nix was provided with every opportunity to rebut those facts prior to and during sentencing. This claim also fails.

In Ground 5, Nix contends that his case suffered from cumulative error based upon an overly aggressive prosecutor, a prejudiced probation officer, and an inexperienced attorney. (Doc. 4 at 16-17.) Nix, however, has not shown any evidence supporting his assertions that the prosecutor

was unduly aggressive or that the probation officer was prejudiced against him, much less that his attorney's relative inexperience actually harmed him.[5]  In sum, Nix has not come close to showing the type of cumulative error that would call for reversal.  *See United States v. Munoz*, 150 F.3d 401, 418 (5th Cir. 1998).

Turning to Ground 6, Nix first contends that the sentencing judge failed to adequately address the § 3553(a) factors on the record.[6]  (Doc. 4

---

[5] To the extent Nix raises an ineffective assistance of counsel claim in Ground 5 based upon his attorney's lack of federal criminal experience, that claim fails for lack of particularization.  A § 2255 movant "must identify specific errors or omissions allegedly committed by counsel," "establish that those errors or omissions were professionally unreasonable, and [establish] that the identified errors or omissions resulted in actual harm to the defense in the sense that there exists a reasonable probability that the outcome of the proceeding would have been different had the errors not occurred." *Waldrop v. Thigpen*, 857 F. Supp. 872, 906 (N.D. Ala. 1994) (emphasis added).  Here, Nix has not alleged any facts showing that his counsel's alleged inexperience actually prejudiced his case and instead relies upon the Court to ferret out the impact of counsel's missteps.  His conclusory allegations are insufficient to warrant § 2255 relief. *United States v. Laetividal-Gonzalez*, 939 F.2d 1455, 1465 (11th Cir. 1991) (no hearing required where movant's allegations fail to satisfy the prejudice prong of the *Strickland v. Washington*, 466 U.S. 668, 687 (1984), ineffective assistance of counsel test); *see also Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1989) (no hearing required on claims "which are based on unsupported generalizations").

[6] Nix also claims that the sentencing judge erroneously relied upon a 22 year-old conviction in setting his Guidelines criminal history category.  (Doc. 4 at 17-20.)  He raised that on appeal, but the Eleventh Circuit squarely rejected the claim. *Nix*, 415 F. App'x at 984 n.1 ("We also note that Nix's 1988 conviction was not, in fact, included in his criminal history category because it occurred more than 15 years before the offense at issue.").  The Court of Appeals also held that the sentencing judge properly considered that conviction as relevant conduct, even though it wasn't

8

at 17-18.)  He is mistaken.  The Eleventh Circuit "has held that 'nothing . . . requires the district court to state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss *each* of the § 3553(a) factors.'"  *United States v. Docampo*, 573 F.3d 1091, 1107 (11th Cir. 2009) (emphasis in original) (quoting *United States v. Scott*, 426 F.3d 1324, 1329 (11th Cir. 2005)).  Instead, it has held "that an 'acknowledgement by the district court that it has considered the defendant's arguments and the factors in section 3553(a) is sufficient.'"  *Id.* (quoting *United States v. Talley*, 431 F.3d 784, 786 (11th Cir. 2005)).  Here, the sentencing judge not only mentioned that he was considered the factors, but he went into great detail in explaining his reasoning for varying from the Guidelines sentence.  (Cr. doc. 52 at 46-47 (sent'g tr.).)

Nix also contends in Ground 6 that the sentencing judge improperly double-counted the fraud amounts by considering the fraud allegations relating to The Arts Center in Illinois.  (Doc. 4 at 19.)  The Court is at a loss as to how this amounts to double counting, and the

included in his criminal history calculations.  *Id.* at 984.  Because this portion of Nix's Ground 6 claim was addressed on appeal, the Court cannot disturb it here.  *See* § II B, *infra*.

Eleventh Circuit explicitly held that the sentencing judge properly relied upon those amounts as relevant conduct. *Nix*, 415 F. App'x at 984; *see* § II B, *infra*. In any event, the additional loss amount attributable to Nix's fraud upon The Arts Center did not impact his total offense score. His intended loss attributable to Concept equaled more than $120,000. Even adding in the losses to The Arts Center, he did not exceed a total intended loss amount of more than $200,000, so the offense enhancement did not change.[7] *See* USSG § 2B1.1(b)(1)(G) (for loss amounts between $120,001 and $200,000 add 10 points to the offense level). Nix's Ground 6 claims also fail.

## B. Claims Already Disposed of on Direct Appeal

Nix contends in Ground 3 that the sentencing judge erred by relying upon the subsequent Illinois fraud scheme numbers in enhancing his sentence.[8] (Doc. 4 at 14.) According to Nix, the

---

[7] Nix has tendered lengthy explanations undercutting the loss amounts, but the Court will not allow him to relitigate the case here. (Doc. 16 (reply brief).) In any event, his explanations are unbelievable and were largely undercut by his plea admissions.

[8] He also claims that he was never afforded an opportunity to rebut or challenge the evidence. (Doc. 4 at 14.) Nix, however, was offered several opportunities to rebut the evidence. (*E.g.*, cr. doc. 52 at 45.)

sentencing judge's reliance upon those allegations was improper because he never pled guilty to the charges and the case was ultimately dismissed.[9] (*Id.*)

As noted above, the Court of Appeals explained that the sentencing judge's consideration of the information was not inappropriate, since sentencing judges may rely upon relevant conduct information when imposing a variance. *Nix*, 415 F. App'x at 984 (citing *United States v. Rodriguez*, 628 F.3d 1258, 1264 (11th Cir. 2010)). It is well settled that in addressing a § 2255 collateral attack upon a conviction or sentence, "[a] district court is not required to reconsider claims of error that were raised and disposed of on direct appeal." *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); *Buckelew v. United States*, 575 F.2d 515, 517-18 (5th Cir. 1978) ("a matter need not be reconsidered on a section 2255 motion if it has already been determined on direct appeal"); 3 CHARLES A. WRIGHT, FEDERAL PRACTICE

---

[9] Nix would have the judge employ the beyond a reasonable doubt standard, but the preponderance of the evidence standard actually controls. *United States v. Hickman*, 175 F. App'x 322, 325) (11th Cir. 2006); *United States v. Rodriguez*, 398 F.3d 1291, 1301 (11th Cir. 2005). In other words, so long as the judge finds it more likely than not that Nix committed that subsequent fraud, it matters not whether he actually pled guilty or was convicted in the scheme. Nix has not offered any evidence rebutting the judge's findings.

AND PROCEDURE § 595 at 723 n.25 (3d ed. 2004)).[10]  Hence, Ground 3 fails.

## C.    Ineffective Assistance of Counsel Claims

Finally, Nix contends that his appointed counsel, Brandon Galloway, rendered deficient performance.  (Doc. 1 at 4; doc. 4 at 1-12.) Specifically, Galloway: (1) failed to obtain American Express records; (2) made an "unauthorized" withdrawal of objections to the PSI; (3) refused to object to the Guidelines enhancements for sophisticated means and abuse of trust; (4) refused to object to the restitution amount; and (5) refused to object to the inclusion of the Illinois state case.[11]  (Doc. 1 at 4.)

---

[10] The preclusive effect of issues decided on direct appeal during a later § 2255 collateral proceeding will give way in the presence of extraordinary circumstances, such as an intervening change in the law or a showing of actual innocence.  *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999); *United States v. Scrivner*, 189 F.3d 825, 828 (9th Cir. 1999); *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995); *United States v. Prichard*, 875 F.2d 789, 791 (10th Cir. 1989); 3 FEDERAL PRACTICE AND PROCEDURE § 595 at 723; *see Withrow v. Williams*, 507 U.S. 680, 720-21 (1993) (Scalia, J., concurring in part and dissenting in part) (the "federal courts have uniformly held that, absent countervailing considerations, district courts may refuse to reach the merits of a constitutional claim previously raised and rejected on direct appeal.").  Here, Nix has not offered any extraordinary circumstance that would warrant reopening the claim.

[11] Nix moved to amend his motion in his § 2255 reply brief in order to add additional ineffectiveness claims.  (Doc. 16 at 15.)  The motion to amend is **GRANTED**, but the new claims fail.

When addressing ineffective assistance of counsel claims, the Court is guided by *Strickland v. Washington*, 466 U.S. 668, 687 (1984), which created a two-part test for determining whether counsel performed ineffectively. First, the movant must demonstrate that his attorney's performance was deficient, which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." 484 U.S. at 687. Second, he must demonstrate that the defective performance prejudiced the defense to

---

As best the Court can tell from Nix's difficult to follow reply brief, he contends that counsel was ineffective, both at sentencing and on direct appeal, for failing to raise a cumulative error claim and for failing to raise a claim based upon the sentencing judge's reliance upon erroneous facts when considering the § 3553(a) factors. (*Id.*) As the Court already explained in text, there was no cumulative error here. Turning to counsel's failure to correct certain "erroneous" facts, Nix again asserts that he did not fraudulently obtain the American Express cards, defraud The Arts Center (at least not to the amount claimed in the PSI), or act as Concept's employee (which goes to the adjustment for abuse of position of trust, discussed in text, *infra*). (*Id.* at 15-19.) Again, raising any argument about the American Express cards or The Arts Center fraud would have been counter-productive. Nix admitted at his change-of-plea proceeding that he made unauthorized charges using Concept's charge cards, and the PSI shows that he later concealed his fraud by "cooking" the books. Additionally, he has not come forward with any admissible evidence undercutting the loss amounts attributable to his fraud upon The Arts Center. And, as discussed in text, *infra*, it matters not whether Nix was actually employed by Concept for the abuse of position of trust enhancement. Moreover, had counsel pursued these claims, Nix likely would have lost his downward adjustment for acceptance of responsibility. (PSI ¶ 33.) Hence, the claims are meritless. But even if counsel erred by failing to raise them, Nix was himself given the opportunity to raise the objections at sentencing. He chose to remain silent. Hence, any prejudice arising at sentencing was self-inflicted.

such a degree that the results of the trial cannot be trusted. *Id.*

Under the performance prong, the reasonableness of an attorney's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances. *Id.* at 690. It is generally appropriate to look to counsel's performance throughout the case in making such a determination. *Kimmelman v. Morrison*, 477 U.S. 365, 386 (1986). The movant carries a heavy burden, as "reviewing courts must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689. Indeed, Nix must show that "'no competent counsel would have taken the action that his counsel did take.'" *Ford v. Hall*, 546 F.3d 1326, 1333 (11th Cir. 2008), *quoting Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc).

Under the prejudice prong, Nix must establish that there was a reasonable probability that the results would have been different but for counsel's deficient performance. *Kimmelman*, 477 U.S. at 375;

*Strickland*, 466 U.S. at 696. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *see also Lightbourne v. Dugger*, 829 F.2d 1012, 1022 (11th Cir. 1987); *Boykins v. Wainwright*, 737 F.2d 1539, 1542 (11th Cir. 1983).

Here, the government contends that based upon the sentencing judge's variance from the Guidelines range, any Guidelines-based, attorney errors necessarily would fail to meet *Strickland*'s prejudice prong.[12] (Doc. 14 at 19.) In other words, since the sentencing judge found that the Guidelines range was too low, Nix's preferred, even lower range would still be too low. Hence, any change in the sentencing range would have had no impact on Nix's actual sentence. (*Id.*) The Court rejects this analysis. The sentencing judge might have relied upon the advisory range in crafting his own sentence. Moreover, if Nix's gripes are valid and counsel failed to effectively litigate those matters at

---

[12] The government cites a single, out-of-circuit district court case for its proposition. *Maldonado v. United States*, 679 F. Supp. 2d 991, 1011 n. 4 (N.D. Iowa 2010). That court held that it was reasonable to presume that a sentencing judge, who had sentenced defendant to the minimum Guidelines sentence, would have awarded the same sentence even if he qualified for a lower but overlapping Guidelines range. This case does not present an overlapping range problem but rather a major sentencing variance. Hence, there is no cause to extend the *Maldonado* presumption here.

sentencing, his errors might have contributed to the sentencing judge's decision to impose a sentence outside of the advisory range.

In any event, Nix's claims fail. As for his claim that counsel erred by failing to subpoena the American Express records (doc. 1 at 4), the Court already explained *supra*, § II A, that the American Express records were essentially irrelevant. Counsel had no reason to subpoena the records. Hence, this claim is meritless. Skipping ahead to his fifth claim -- that counsel erred in failing to object to the Illinois fraud scheme's inclusion in the PSI -- any objection by counsel to its consideration and inclusion would have failed. As the Eleventh Circuit noted in *Nix*, 415 F. App'x at 984, it was clearly relevant conduct that revealed ongoing fraud and demonstrated Nix's absolute lack of remorse for his actions. Hence, Nix has not shown deficient performance or prejudice on either claim.

Nix's next batch of claims is closely related. In his second ineffectiveness claim, he contends that counsel withdrew certain objections without his authorization. (Doc. 1 at 4.) In his third and fourth claims, he states that counsel's withdrawal of the objections and

failure to raise additional objections led the sentencing judge to apply the abuse of trust and sophisticated means sentencing enhancements and resulted in heightened loss and restitution figures. (*Id.*)

At the outset, the decision to withdraw the PSI objections rested with counsel since it was not a fundamental decision, like whether to testify at trial, plead guilty, or take an appeal. *E.g.*, *Florida v. Nixon*, 543 U.S. 175, 187 (2004); *see also Thomas v. Tenneco Packaging Co.*, 293 F.3d 1306, 1337 (11th Cir. 2002) ("An attorney should not be an unreflecting conduit through which the opinions or desires of a client or witness are permitted to flow unchecked."). Accordingly, it matters not whether Nix authorized counsel to withdraw the objections (particularly since he had an opportunity at sentencing to assert these claims himself). The question, then, is whether counsel rendered deficient performance by failing to pursue the objections Nix wanted his counsel to pursue. He did not.

Counsel had every reason to think that Nix would lose in challenging the sophisticated means enhancement. The enhancement requires a showing of "especially complex or especially intricate offense

conduct pertaining to the execution or concealment of an offense." USSG § 2B1.1 application notes.[13]  Here, Nix added himself to the American Express account, which involved submitting fraudulent documents to the Secretary of State to have his name listed in the company's business records as the Chief Financial Officer.[14]  Even without that activity, Nix also cooked the books for more than a year-and-a-half, which resulted in a paper trail so convoluted that it took three accountants to sort it all out.

Nix further contends that he should not have received an abuse of trust enhancement because he was not technically an employee but a contractor.  (Doc. 4 at 5.)  Moreover, Concept's owners stated that he had no discretionary authority.  (*Id.*)  True, the abuse of trust Guidelines provision, USSG § 3B1.3, applies to employees who abuse

---

[13] Nix contends that the enhancement requires a showing that he employed "[c]onduct such as hiding assets or transactions, or both, through the use of fictitious entities, corporate shells, or offshore financial accounts."  (Doc. 4 at 4.)  Those are merely examples.  They are not prerequisites to imposing the enhancement.

[14] Nix has not offered any facts disputing the victims' testimony that he fraudulently added himself as CFO, but he insists that he did not do so in order to obtain the American Express card since the card was obtained months earlier.  (Doc. 4 at 3.)  Records from the Secretary of State show that he was listed as CFO in May 2007, but it is unclear when he actually submitted the paperwork to make that change.  (*Id.* at 21.)

substantial "professional or managerial discretion," but it also covers those who obfuscate their theft using a "special skill." *Id.* Here, Nix operated as the company's accountant, which falls squarely within the "special skill" category. *Id.* application notes. Consequently, it was reasonable for counsel to conclude that the objection was meritless.

Nix also contends that counsel erred by failing to challenge the loss amount. (Doc. 4 at 6-8.) He raises unsubstantiated errors that are not supported by the evidence. The Court is entirely unpersuaded that, under the evidence of record, Nix could have successfully reduced the loss amount to below $120,000, which would have entitled him to a slightly lower § 2B1.1 sentencing enhancement (8 points rather than 10 points). Consequently, it was not error for counsel to conclude that his objections on this score were unlikely to succeed.

In his final ineffectiveness claim, Nix states that counsel erred by failing to challenge the restitution portion of his sentence. Restitution claims, including ineffectiveness claims premised upon a failure to object to a restitution amount, are not reachable in § 2255 proceedings since they do not challenge the movant's custody. *Mamone v. United*

*States*, 559 F.3d 1209, 1211 (11th Cir. 2009) (§ 2255 movant cannot utilize § 2255 to challenge his restitution order, even if cognizable claims seeking release from custody are also raised; the presence of a cognizable claim against the prisoner's custodial punishment does not make his non-cognizable claims more amenable to appellate review); *Blaik v. United States*, 161 F.3d 1341, 1343 (11th Cir. 1998) ("§ 2255 cannot be utilized by a federal prisoner who challenges only the restitution portion of his sentence because § 2255 affords relief only to those prisoners who 'claim[] the right to be released from custody.'"); *United States v. Segler*, 37 F.3d 1131, 1136-37 (5th Cir.1994) (a prisoner may not bring an ineffective assistance of counsel claim premised upon counsel's failure to object to a restitution order). Consequently, this portion of Nix's claim also fails.

In conclusion, Nix's proposed objections were weak at best. Counsel's decision at sentencing to forego these objections appears to have been an entirely sound exercise of professional judgment.[15] Counsel therefore did not render deficient performance.

---

[15] Additionally, Nix was given the opportunity to speak at the sentencing hearing and could have spelled out his own objections.

## III. CONCLUSION

For the foregoing reasons, Nix's § 2255 motion (doc. 1) should be **DENIED**. Applying the Certificate of Appealability ("COA") standards, which are set forth in *Brown v. United States*, 2009 WL 307872 at * 1-2 (S.D. Ga. Feb. 9, 2009) (unpublished), the Court discerns no COA-worthy issues at this stage of the litigation, so no COA should issue. 28 U.S.C. § 2253(c)(1); *see Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (approving *sua sponte* denial of COA before movant filed a notice of appeal). And since there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, *in forma pauperis* status on appeal should likewise be **DENIED**. 28 U.S.C. § 1915(a)(3).

Nix's motion to proceed *in forma pauperis* (doc. 3) is also **DENIED**. No filing fee is required for § 2255 motions. 28 U.S.C. § 1914; *see* Rule 3, Rules Governing Section 2255 Proceedings for the United States District Courts ("There is no filing fee required of a movant under these rules."). His motion to be released (doc. 12), is also **DENIED**.

**SO REPORTED AND RECOMMENDED** this  8th  day of

November, 2011.

_JB Smith_

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA